***********
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. It is stipulated that all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. It is stipulated that all parties have been correctly designated and that there is no question as to the misjoinder or nonjoinder of parties.
3. There was an employer-employee relationship at the time of plaintiff's alleged injury.
4. Plaintiff's average weekly wage is $413.42, resulting in a compensation rate of $275.63, pursuant to a Form 22.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-six years old with a high school diploma. Plaintiff also completed a few classes at the community college level.
2. In March 2002, plaintiff began employment with defendant as a cashier/customer service representative. On May 14, 2004, while putting a box of ceramic tile in a cart, plaintiff felt a pull in her back. The claim was accepted as compensable by the filing of a Form 60.
3. Prior to her compensable back injury of May 14, 2004, plaintiff underwent two lumbar laminectomy surgeries at L5-S1, which were unrelated to her compensable injury.
4. On June 14, 2004, plaintiff came under the treatment of Dr. James Hirsch, who initially prescribed anti-inflammatories and physical therapy. After a series of radiographic *Page 3 
studies, Dr. Hirsch recommended a fusion from L4 through S1 with instrumentation and bone grafting. Dr. Hirsch performed the surgery on November 11, 2004. Physical therapy and work hardening followed the fusion surgery.
5. Plaintiff underwent a functional capacity evaluation (FCE) on July 1, 2005, which indicated she was capable of working four hours per day at a sedentary level. In accordance with the FCE, Dr. Hirsch released plaintiff to return to work with a ten pound lifting restriction at the light physical demand level for four hours per day on August 16, 2005. Dr. Hirsch also stated that plaintiff needed the ability to have frequent breaks and change of position.
6. At the request of Dr. Hirsch, a second FCE was conducted on October 28, 2005. The results indicated that plaintiff was able to work at the light physical demand level for eight hours per day. Her specific leg lift capability was fifteen pounds and torso lift ability was ten pounds. In addition, the restrictions of infrequent bending and crawling were recommended.
7. On November 4, 2005, Dr. Hirsch released plaintiff to return to work with the restrictions identified in her FCE. As of December 7, 2005, Dr. Hirsch noted no further surgical intervention was needed and her myleogram results looked good. He noted that her pain should be monitored by a multi-disciplinary pain clinic. Dr. Hirsch released plaintiff to return to work for four hours per day for one month before releasing her to full-time work within the FCE restrictions on January 9, 2006.
8. On February 17, 2006, Dr. Hirsch declared plaintiff at maximum medical improvement and assigned a forty-five percent permanent partial impairment rating to the back.
9. On May 12, 2006, plaintiff saw Dr. Hirsch with complaints of back pain, pain radiating down into the anterior and lateral upper leg on the left. Dr. Hirsch prescribed medications and ordered an MRI. Dr. Hirsch wrote plaintiff out of work from May 12, 2006 *Page 4 
until May 22, 2006. On August 18, 2006, plaintiff returned to Dr. Hirsch with complaints of pain radiating into her legs. Dr. Hirsch recommended that plaintiff be evaluated for candidacy with a dorsal column stimulator.
10. At some time following her release to return to work for eight hours per day with restrictions by Dr. Hirsch, plaintiff returned to work for defendant as a cashier. The job description for a cashier states that a cashier must be able to stand, bend, stoop, kneel, reach, twist, lift, push, pull, climb, balance, crouch, handle and move items weighing up to fifty pounds without assistance and be able to stand and/or sit continuously. There is also a requirement that the cashier have the ability to move objects up to and exceeding two hundred pounds with reasonable accommodations. Deana Wyrick, administrative manager for defendant, testified that a stool is available for plaintiff to use when necessary. According to Ms. Wyrick, plaintiff's lifting restriction, identified in the FCE, would also be accommodated so that she would not be required to lift fifty pounds as stated in the job description.
11. Plaintiff testified that after her return to work, she used the stool to relieve her back pain. She testified that when the store is busy, she is unable to sit to perform the duties of her job such as typing the keys and bagging the merchandise. To perform her job effectively, plaintiff moves, pulls and/or lifts items above her restrictions. She frequently needs to bend and twist to take items out of the shopping cart to be scanned.
12. Defendant also has a switchboard operator job available to plaintiff. The switchboard operator handles the customer service desk, which includes handling heavy returns exceeding plaintiff's lifting restrictions. Ms. Wyrick testified that defendant would accommodate plaintiff's work restrictions. There are three switchboard operators working, with *Page 5 
one operator only answering the telephone due to restrictions from a workers' compensation injury to the wrist.
13. Plaintiff contends that the cashier position that she performs is not suitable employment because it is make-work. Based upon the credible evidence of record, the undersigned find, that the cashier job is not suitable given plaintiff's physical condition and due to the fact that, as offered, the position was make-work and would not be regularly available in the competitive job market.
14. The switchboard position offered to plaintiff is not suitable employment because it is make-work. Defendant agreed to significantly modify the physical requirements of the switchboard position to accommodate plaintiff's work restrictions. The undersigned find that, as modified, the switchboard position was make-work and not one that would be regularly available in the competitive job market.
15. As the result of her May 14, 2004 injury by accident and related physical restrictions, plaintiff continues to be unable to earn any wages in any employment.
16. Dr. Hirsch opined, and the undersigned find, that evaluation and treatment through a multi-disciplinary pain clinic is reasonably necessary to effect a cure, give relief, or lessen plaintiff's period of disability.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On May 14, 2004, plaintiff sustained a compensable injury by accident arising out of and in the course of the employment with defendant. N.C. Gen. Stat. § 97-2(6). *Page 6 
2. As a result of her compensable injury, plaintiff is entitled to payment for all reasonable medical expenses incurred or to be incurred as a result of her compensable injury for so long as said treatment effects a cure, gives relief, or lessens plaintiff's period of disability, including the multi-disciplinary pain clinic recommended by authorized treating physician, Dr. Hirsch. N.C. Gen. Stat. §§ 97-25, 97-25.1.
3. The cashier job plaintiff is performing was so modified that it constitutes make-work and is not indicative of plaintiff's actual wage earning ability in an open, competitive job market. See e.g., Peoples v.Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798 (1986).
4. The switchboard operator job offered to plaintiff was so modified that it constitutes make-work and is not indicative of plaintiff's actual wage earning ability in an open, competitive job market. Seee.g., Peoples v. Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798 (1986).
5. Plaintiff is entitled to the immediate resumption of temporary total disability benefits at the weekly compensation rate of $275.63 and such payments shall continue until plaintiff returns to work or until further order of the Commission.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury by accident on May 14, 2004, including, but not limited to, plaintiff's ongoing treatment with Dr. Hirsch and evaluation and treatment with a multi-disciplinary pain clinic as recommended by Dr. Hirsch. *Page 7 
2. Plaintiff may cease her work as a cashier for defendant. Defendant shall resume payment of temporary total disability benefits at the weekly compensation rate of $275.63 and should continue until plaintiff returns to work or until further order of the Commission.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff is hereby approved for plaintiff's counsel and shall be paid as follows: defendant shall send every fourth compensation check directly to plaintiff's counsel.
4. Defendant shall pay the costs.
This the 27th day of November, 2007.
S/______________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/______________________ DIANNE C. SELLERS COMMISSIONER
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1